LUIS SANTAELLA ET AL., Plaintiffs and Appellants, *v.* LUCÍA PURÓN MARCOS ET AL., Defendants and Appellees.

No. 8216. Argued May 1, 1942.—Decided June 10, 1942.

*Orlando J. Antonsanti* for appellants. *R. Díaz Collazo* for appellees.

Mr. Justice De Jesús delivered the opinion of the court.

By a deed No. 327, executed on September 22, 1903, before Notary Santiago R. Palmer Romaguera, the Cooperative Building, Savings, and Loan Association of Puerto Rico (*Asociación Cooperativa de Construcciones, Ahorros y Préstamos de Puerto Rico*), consolidated two properties owned by it and located in the south section of the ward of Santurce, of this city, and by the same deed and for the purpose of devoting a portion of that land to a housing development (*urbanización*), it segregated from the tract thus consolidated an urban parcel of land known as Miramar, consisting of 19 hectares, 28 acres, and 11½ centiares, which it divided into blocks marked with letters A to P, inclusive, and an unnamed block for a hotel to be built thereon, with an area of 7,000 square meters. Among other restrictions imposed on the lots constituting said blocks, there was one described under letter A in said deed which literally transcribed reads as follows:

"No building, balcony, window, exit, or other construction, except steps and staircases, shall be erected on the lots less than three meters from the front thereof on the streets or avenue on which they are situated."

The segregation, subject of course to the above-mentioned restrictions, was recorded in the Registry of Property of San Juan on December 9, 1903, at folio 158, vol. 52 of the Capital, property No. 2224, first inscription.

The appellants, who own lots in Block P of the said development, filed in the lower court, on April 6, 1939, a petition for an injunction against the appellees, and alleged in substance that the latter, who also own another lot situated in the same Block P, at the corner of Miramar Avenue and Roosevelt Street, about the middle of February of said year began to erect, and, at the time of the filing of the complaint, were still erecting on said lot an apartment house in violation of the restriction above transcribed, inasmuch as the distance from the front of that building to said street

or avenue was less than three meters. The plaintiffs-appellants pray for a perpetual injunction commanding the defendants-appellees to demolish and remove such part of the building as has been included within the three meters referred to in restriction A; that until the issuance of a perpetual injunction a preliminary injunction be granted ordering the defendants, their representatives, agents, or employees to discontinue said building; and that pending the issuance of a preliminary injunction a restraining order be issued.

The facts of this case, as the same were found by the lower court, and as they appear from the statement of the case filed, may be summarized as follows:

Early in February 1939, the defendants started to erect the building involved in this controversy, for which purpose they first set up a wooden enclosure nine or ten feet high on the front side facing Miramar Avenue and on that facing Roosevelt Street, placing the building, on the side overlooking Miramar Avenue, at two meters fifty centimeters from the line of the avenue, and on that overlooking Roosevelt Street at two meters thirty-seven centimeters. The enclosure in question prevented the gauging from the outside of the distance from the location of the building to those streets, for although it had two openings facing Roosevelt Street, they were continually shut by doors or gates. As there was no sign to reveal the names of either the owners or of the contractor, and as the enclosure was not removed until it became necessary to place the false floor (*falso piso*) on the first story early in the following month of March, it was not until then that the petitioners became aware of the violation of the restriction in question and, through Attorney O. Antonsanti, after the latter had made inquiries in the Registry of Property, in the Health Department, and in the Department of Public Works of the Capital, about March 28, 1939, wrote to Juan Robledo Marcos, attorney in fact of

the defendants-appellees, warning him of, and protesting against, the violation. The letter was received by Robledo, and his attorney replied the next day on behalf of the defendants merely requesting Antonsanti to advise him who were his clients so as to determine their interest in the matter; and that they then would meet Antonsanti in order to ascertain the claims of his clients. Two or three days after receiving the letter, Antonsanti was able to communicate by telephone with Díaz Collazo, attorney for the defendants-appellees, when he told them that one of his clients was Santaella; whereupon Díaz Collazo asked them not to proceed further for two or three days, to which Antonsanti consented. As the latter, however, found out that after that conference, they went on working at night, he proceeded to file the injunction petition on April 6, 1939.

In view of those facts, the lower court in its order granting the preliminary injunction held that the violation had been shown by a preponderance of the evidence and by the testimony of Enrique Tizol himself, a witness for the defendants and architect and contractor of the work. The lower court found that the petitioners and appellants had not incurred in laches in instituting the action, nor could the defense of estoppel prosper as against them on the ground that petitioner Prann had violated the restriction, inasmuch as such violation had not been proved. It was also found by the court that the violation of the restriction prejudicially affected the external appearance of the housing development and depreciated the value of the properties thereon; and that it was not shown that any alteration had been made in the general plan of the Miramar development. The lower court finally held that the defendants were not persons who had innocently spent money in the erection of the work, since by their own acts they had prevented the petitioners from taking action previously, and moreover that they knowingly violated the restriction to which the lot upon which they built was subject.

In view of the above facts, the lower court issued a preliminary injunction on May 26, 1939, and the parties having stipulated on the following day that the issuance of the final injunction be determined upon the same evidence, a judgment was rendered on the 5th of the following June, granting a perpetual injunction, thus:

"For the reasons set forth in the statement of the case and opinion attached to the record and made part thereof, the court denies the petition herein in so far as it is therein sought to have the building of the defendants demolished, but sustains the same as to making perpetual the preliminary injunction granted, restraining the defendants from proceeding further with the erection of said building in such way as to continue violating the restriction to which the lot of the defendants is subject, including attorney's fees which are assessed at $300."

In the opinion in support of said judgment rendered on June 5, 1939, the court said:

"It has been shown, moreover, that, although the defendants violated the restriction, they did so, according to the uncontradicted testimony of Tizol, because when measuring the width of Roosevelt Street and Miramar Avenue he found out that they did not measure 12 and 15 meters, respectively, which they should have measured in accordance with the plat of the development, and although this is no excuse for such violation, it at least prevents us from declaring that it was done in bad faith and without any excuse whatsoever. " *     *     *     *     *     *     *

"In the case at bar, however, we think that, although the petitioners are entitled to stop further work on the building of the defendants which has not yet been finished, in violation of the restriction if we take into account all the facts of the case we do not consider that this is a case where we should exercise our equitable discretion and order the demolition of the building of the defendants. We are not comparing and measuring any damage that might be caused to the defendants with that sustained by the plaintiffs, since, as was held in the Lawton case, supra, that is not an indispensable element, but we think that to grant a mandatory injunction in the present case would be an oppressive act, not very equitable under all the proven facts. The rights of the petitioners have been recog-

544

nized by restraining the defendants from proceeding further with the building in such a way that the construction of any part thereof not yet built might violate the restriction.'' (Italics ours.)

■ Assuming that when Tizol measured the streets in question he actually found out that they were not of the same width as shown by the plat of the housing development, then, the streets being narrower, the three-meter strip ought necessarily to have reached deeper into the lot and the building, therefore, should have been located at a distance greater than three meters and not less, as actually happened.

The evidence shows, moreover, that prior to the erection of the work of the defendants, the same contractor Tizol erected in the same Miramar Avenue, about two blocks from the lot of the defendants-appellees, a building which was also located in violation of the restriction. This brought serious troubles to the owner thereof against whom the interested parties decided not to institute any action in court on account of her being a widow.

■ The lower court itself, when stating the grounds for its decision granting the preliminary injunction, as already stated by us, held that the defendants could not be considered as ''innocent'' parties, charging them with knowingly violating the restriction and preventing the plaintiffs-appellants from taking action before.

In these circumstances, we fail to see how the alleged mistake of Tizol could be justified. Nor can we agree with the lower court that ''the rights of the petitioners have been recognized by restraining the defendants from proceeding further with the building in such a way that the construction of any part thereof not yet built might violate the restriction.''

The erection of the walls in question within the prohibited area is by itself a violation of the rights of the petitioners and the violation will persistently continue so long as said walls are not removed. Unquestionably, it woul be prefer-

able for the petitioners and appellants to have the building finished in accordance with the original plans rather than permit the same to remain unfinished on the lot.

Ever since the decision in *Glines* v. *Matta et al.*, 19 P.R.R. 388, this court has consistently upheld the validity of such restrictions and the right of the injured parties to compel the purchasers of lots subject thereto to a strict compliance therewith. In the cited case this court affirmed the judgment of the lower court which ordered the demolition of certain garages built in violation of the restriction, precisely within the same Miramar housing development. It seems advisable to reproduce here §1342 of Pomeroy's work Equity Juris- prudence which was transcribed in the opinion by this court, at page 394, as follows:

"Section 1342. *Restrictive Covenants Creating Equitable Ease- ments.*—This doctrine has already been examined and it has been shown that restrictive covenants in deeds, leases, and agreements limiting the use of land in a specified manner, or prescribing a par- ticular use, which create equitable servitudes on the land, will be specifically enforced in equity by means of an injunction, not only between the immediate parties, but also against subsequent pur- chasers with notice, even when the covenants are not of the kind which technically run with the land. The injunction in this class of cases is granted almost as a matter of course upon a breach of the covenant. The amount of damages, and even the fact that the plain- tiff has sustained *any* pecuniary damages, are wholly immaterial. In the words of one of the ablest of modern equity judges: 'It is clearly established by authority that there is sufficient to justify the court interfering, if there has been a breach of the covenant. It is not for the court, but the plaintiffs, to estimate the amount of dam- ages that arises from the injury inflicted upon them. The moment the court finds that there has been a breach of the covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract, although his remedy is that which I have described,' namely, an injunction."

Subsequently, in *Lawton* v. *Rodríguez*, 35 P.R.R. 445, 458, and 38 P.R.R. 34, the demolition was ordered of a part of a

house in Carrión's Court, built in violation of a restriction similar to the one under consideration, and at a cost of about $4,000. In the first of those cases, at page 458, it was said:

"The injury, therefore, is not an element that must necessarily be compared and weighed in the case. It has been held in harmony with our Injunctions Act and the doctrine laid down in the *Glines Case* that the mere fact that a contract is violated is sufficient ground for the intervention of the courts by injunction; the purchaser has a right to use and enjoy the property in the manner and form stipulated and it is no answer to say that the act of which a plaintiff complains does not cause him any injury or will not result in any benefit to him."

See in this connection the case of *Joyce* v. *Krupp* (Cal. 1927), 257 P. 124, 127, where it was said:

"Where equitable relief is sought, proof of actual or substantial injury is not essential, the establishment of a violation of a uniform building restriction being all that is necessary to entitle a complaining owner to relief. . . . "

See also the case of *Macatee* v. *Biascoechea,* 37 P.R.R. 1, where similarly an injunction was granted to prevent the violation of another restriction to which the Miramar building lots are subject and which forbids the erection of buildings on said lots to be devoted to commercial or industrial undertakings.

For the reasons stated the appeal must be sustained and, consequently the judgment appealed from modified so as to sustain the complaint and to issue a mandatory injunction ordering the defendants to demolish and remove such parts of the building as were erected on the area prohibited by the restriction overlooking Miramar Avenue and Roosevelt Street, for which purpose the defendants-appellees will be allowed ninety days from the time the mandate of this court is received in the lower court, and, as so modified, the judgment will be affirmed in all other particulars.

Mr. Chief Justice Del Toro and Mr. Justice Todd, Jr., did not participate herein.